IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| GEORGIA POWER COMPANY; OGLETHORPE POWER CORPORATION; MUNICIPAL ELECTRIC AUTHORITY OF GEORGIA; and the CITY OF DALTON, GEORGIA,<br><br>   Plaintiffs,<br> v.<br><br>WESTINGHOUSE ELECTRIC COMPANY, LLC and STONE & WEBSTER, INC.<br><br>   Defendants. | Case No. CV112-167-JRH-WLB |

**PLAINTIFFS' ANSWER AND DEFENSES
TO DEFENDANTS' COUNTERCLAIM**

Plaintiffs Georgia Power Company ("Georgia Power"), Oglethorpe Power Corporation, the Municipal Electric Authority of Georgia, and the City of Dalton Georgia (collectively, "Owners") answer the Defendants' Counterclaim (Doc. 51) and assert defenses thereto as follows:

**First Defense**

The Contractor's Counterclaim fails to state a claim for which relief may be granted.

**Second Defense**

The Contractor's Counterclaim is barred by the doctrine of payment.

**Third Defense**

The Contractor's own actions, omissions, conduct, and breaches are the sole cause of the alleged damages or injury to the Contractor.

**Fourth Defense**

The Contractor's Counterclaim, including any alleged delay damages sought by the Contractor, is barred and superseded by the Contractor's own actions, omissions, conduct, and breaches, including concurrent delays caused by the Contractor.

**Fifth Defense**

The Contractor has failed to mitigate its alleged damages.

**Sixth Defense**

The Contractor's Counterclaim is barred by the affirmative defenses of accord and satisfaction, release, laches, waiver, estoppel, and set-off.

**Seventh Defense**

The provisions of the Georgia Prompt Payment Act, O.C.G.A. § 13-11-1 et seq., bar the Contractor's Counterclaim under that Act.

**Eighth Defense**

The Contractor has failed to satisfy legal and contractual conditions precedent and subsequent, including failure to provide proper notice and information regarding its alleged claims.

**Ninth Defense**

The Owners respond to the numbered allegations of the Counterclaim as follows:

**PARTIES**

1. The Owners admit the allegations in Paragraph 1 of the Counterclaim.
2. The Owners admit the allegations in Paragraph 2 of the Counterclaim.
3. The Owners admit the allegations in Paragraph 3 of the Counterclaim.
4. The Owners admit the allegations in Paragraph 4 of the Counterclaim.

5. The Owners admit the allegations in Paragraph 5 of the Counterclaim.

6. The Owners admit the allegations in Paragraph 6 of the Counterclaim.

## JURISDICTION

7. The Owners admit the allegations in Paragraph 7 of the Counterclaim.

## VENUE

8. The Owners admit that venue is proper in this District, but deny the remaining allegations of Paragraph 8 of the Counterclaim, except that the Owners admit that the Contractor has purported to reserve "its right to challenge the propriety of venue in this Court based upon the appeal currently pending in the United States Court of Appeals for the District of Columbia Circuit."

## BACKGROUND FACTS

### The Project and EPC Agreement

9. The Owners admit the allegations in Paragraph 9 of the Counterclaim.

10. The Owners admit the allegations in Paragraph 10 of the Counterclaim.

11. The Owners state that the EPC Agreement speaks for itself and is the best evidence of its terms and content, and that any allegations inconsistent therewith are denied. The Owners deny the remaining allegations of Paragraph 11.

12. The Owners admit the allegations in Paragraph 12 of the Counterclaim.

### Applicable Regulatory Process and Corresponding Contractual Risk Allocation

13. The Owners admit that they were required to obtain a Combined Operating License (COL) from the United States Nuclear Regulatory Commission ("NRC") pursuant to the procedures set forth in 10 CFR Part 52. The Owners further admit that a COL allows the applicant to both construct and operate a nuclear power plant at a specific site and that the Project was the first new nuclear plant to be licensed for construction in the United States since

1978 and the first nuclear power plant to receive a COL through the 10 CFR Part 52 process. The Owners deny the remaining allegations, if any, in Paragraph 13 of the Counterclaim.

14. The Owners admit that Article 4.1(h) of the EPC Agreement is titled "Owners' Government Approvals" and further admits that the EPC Agreement defines "Government Approvals," which includes the COL for the Project. The Owners further state that the EPC Agreement speaks for itself and is the best evidence of its terms and content, and that any allegations inconsistent therewith are denied. The Owners deny the remaining allegations, if any, in Paragraph 14 of the Counterclaim.

15. The Owners admit that the EPC Agreement contains Article 4.1, titled "Owners Responsibilities." The Owners further state that the EPC Agreement speaks for itself and is the best evidence of its terms and content, and that any allegations inconsistent therewith are denied. The Owners deny the remaining allegations, if any, in Paragraph 15 of the Counterclaim.

16. The Owners deny all of the allegations in Paragraph 16 of the Counterclaim except the fact that the EPC Agreement contains Article 9, titled "Changes," which includes subsections 9.1(a) through (e). The Owners further state that the EPC Agreement speaks for itself and is the best evidence of its terms and content, and that any allegations inconsistent therewith are denied. The Owners deny the remaining allegations, if any, in Paragraph 16 of the Counterclaim.

17. The Owners admit the EPC Agreement defines the term "Law." The Owners further state that the EPC Agreement speaks for itself and is the best evidence of its terms and content, and that any allegations inconsistent therewith are denied. The Owners deny the remaining allegations, if any, in Paragraph 17 of the Counterclaim.

18. The Owners admit the EPC Agreement defines the term "Uncontrollable Circumstance." The Owners further state that the EPC Agreement speaks for itself and is the best evidence of its terms and content, and that any allegations inconsistent therewith are denied. The Owners deny the remaining allegations, if any, in Paragraph 18 of the Counterclaim.

**Shield Building for Units 3 and 4**

19. The Owners admit that each of the Units is designed with a structure referred to as a Shield Building. The Owners deny the remaining allegations, if any, in Paragraph 19 of the Counterclaim.

20. The Owners admit that as of the Effective Date of the EPC Agreement, the NRC had issued a proposed rule relating to aircraft impact considerations for new nuclear power plants. The Owners further state that the proposed rule speaks for itself and is the best evidence of its requirements and content, and that any allegations inconsistent therewith are denied. The Owners deny the remaining allegations, if any, in Paragraph 20 of the Counterclaim.

21. The Owners admit that an SC structure involves two steel plates and concrete between them. The Owners deny the remaining allegations, if any, in Paragraph 21 of the Counterclaim.

22. The Owners deny the allegations in Paragraph 22 of the Counterclaim.

23. The Owners state that the EPC Agreement speaks for itself and is the best evidence of its terms and content, and that any allegations inconsistent therewith are denied. The Owners deny the remaining allegations, if any, in Paragraph 23 of the Counterclaim.

24. The Owners deny the allegations in Paragraph 24 of the Counterclaim.

25. The Owners deny the allegations in Paragraph 25 of the Counterclaim.

26. The Owners deny the allegations in Paragraph 26 of the Counterclaim.

27. The Owners deny the allegations in Paragraph 27 of the Counterclaim.

28. The Owners deny the allegations in Paragraph 28 of the Counterclaim.

29. The Owners deny the allegations in Paragraph 29 of the Counterclaim.

30. The Owners admit the EPC Agreement contains Article 9.1 titled "Entitlement to Change." The Owners further state that the EPC Agreement speaks for itself and is the best evidence of its terms and content, and that any allegations inconsistent therewith are denied. The Owners deny the remaining allegations, if any, in Paragraph 30 of the Counterclaim.

31. The Owners admit the EPC Agreement defines the terms "Change in Law" and "Law." The Owners further state that the EPC Agreement speaks for itself and is the best evidence of its terms and content, and that any allegations inconsistent therewith are denied. The Owners deny the remaining allegations, if any, in Paragraph 31 of the Counterclaim.

32. The Owners admit the EPC Agreement defines the term "Uncontrollable Circumstance." The Owners further state that the EPC Agreement speaks for itself and is the best evidence of its terms and content, and that any allegations inconsistent therewith are denied. The Owners deny the remaining allegations, if any, in Paragraph 32 of the Counterclaim.

33. The Owners admit the EPC Agreement contains Article 9, which governs "Changes." The Owners further state that the EPC Agreement speaks for itself and is the best evidence of its terms and content, and that any allegations inconsistent therewith are denied. The Owners deny the remaining allegations, if any, in Paragraph 33 of the Counterclaim.

34. The Owners deny the allegations in Paragraph 34 of the Counterclaim.

35. The Owners deny the allegations in Paragraph 35 of the Counterclaim.

36. The Owners deny the allegations in Paragraph 36 of the Counterclaim.

37. The Owners deny the allegations in Paragraph 37 of the Counterclaim.

38. The Owners deny the allegations in Paragraph 38 of the Counterclaim.

39. The Owners deny the allegations in Paragraph 39 of the Counterclaim.

40. The Owners deny the allegations in Paragraph 40 of the Counterclaim.

41. The Owners deny the allegations in Paragraph 41 of the Counterclaim.

42. The Owners deny the allegations in Paragraph 42 of the Counterclaim.

43. The Owners deny the allegations in Paragraph 43 of the Counterclaim.

**Structural Modules**

44. The Owners admit that a form of modular construction is utilized for specific structural and mechanical elements of the AP1000 design. The Owners deny the remaining allegations, if any, in Paragraph 44 of the Counterclaim.

45. The Owners deny the allegations in Paragraph 45 of the Counterclaim.

46. The Owners deny the allegations in Paragraph 46 of the Counterclaim.

47. The Owners deny the allegations in Paragraph 47 of the Counterclaim.

48. The Owners deny the allegations in Paragraph 48 of the Counterclaim.

49. The Owners deny the allegations in Paragraph 49 of the Counterclaim.

50. The Owners deny the allegations in Paragraph 50 of the Counterclaim.

51. The Owners deny the allegations in Paragraph 51 of the Counterclaim.

52. The Owners deny the allegations in Paragraph 52 of the Counterclaim.

53. The Owners deny the allegations in Paragraph 53 of the Counterclaim.

54. The Owners deny the allegations in Paragraph 54 of the Counterclaim.

55. The Owners deny the allegations in Paragraph 55 of the Counterclaim.

56. The Owners deny the allegations in Paragraph 56 of the Counterclaim.

57. The Owners deny the allegations in Paragraph 57 of the Counterclaim.

58. The Owners deny the allegations in Paragraph 58 of the Counterclaim.

59. The Owners deny the allegations in Paragraph 59 of the Counterclaim.

**Limited Work Authorization and Combined Operating License Delays**

60.     The Owners admit that, pursuant to 10 CFR § 50.10(d), the NRC is authorized to issue a Limited Work Authorization prior to the issuance of a COL.  The Owners deny the remaining allegations, if any, in Paragraph 60 of the Counterclaim.

61.     The Owners deny the allegations in Paragraph 61 of the Counterclaim.

62.     The Owners admit that the EPC Agreement, specifically Exhibit E-1, refers to an Owners milestone for obtaining an LWA, but the Owners deny that any LWA was required to encompass NI rebar installation.  The Owners further state that the EPC Agreement speaks for itself and is the best evidence of its terms and content, and that any allegations inconsistent therewith are denied.  The Owners deny the remaining allegations, if any, in Paragraph 62 of the Counterclaim.

63.     The Owners deny the allegations in Paragraph 63 of the Counterclaim.

64.     The Owners admit that Article 4.1 of the EPC Agreement makes the Owners responsible for obtaining certain "Government Approvals," including the COL.  The Owners also admit that Exhibit E-1 refers to an Owners milestone for obtaining an LWA, but the Owners deny that any LWA was required to encompass NI rebar installation.  The Owners further state that the EPC Agreement speaks for itself and is the best evidence of its terms and content, and that any allegations inconsistent therewith are denied.  The Owners deny the remaining allegations, if any, in Paragraph 64 of the Counterclaim.

65.     The Owners admit that, prior to the Effective Date of the EPC Agreement, the Owners submitted a request to the NRC for an LWA that included preparation of the NI foundation base slab forms and reinforcing steel, and that the Owners withdrew the NI

foundation rebar installation portion of the LWA request from the NRC review process.  The Owners deny the existence of any obligation (whether in the EPC Agreement or otherwise) to obtain an LWA for NI rebar installation, and further deny the remaining allegations, if any, in Paragraph 65 of the Counterclaim.

66. The Owners admit that the COL was issued on February 10, 2012.  The Owners deny the remaining allegations, if any, in Paragraph 66 of the Counterclaim.

67. The Owners deny the allegations in Paragraph 67 of the Counterclaim.

68. The Owners admit that the Contractor purports to quote an incomplete portion of Article 9.1(a) of the EPC Agreement but deny that the quotation is accurate.  The Owners further state that the EPC Agreement speaks for itself and is the best evidence of its terms and content, and that any allegations inconsistent therewith are denied.  The Owners deny the remaining allegations, if any, in Paragraph 68 of the Counterclaim.

69. The Owners admit the EPC Agreement defines the term "Work."  The Owners further state that the EPC Agreement speaks for itself and is the best evidence of its terms and content, and that any allegations inconsistent therewith are denied.  The Owners deny the remaining allegations, if any, in Paragraph 69 of the Counterclaim.

70. The Owners state that the EPC Agreement speaks for itself and is the best evidence of its terms and content, and that any allegations inconsistent therewith are denied.  The Owners deny the remaining allegations, if any, in Paragraph 70 of the Counterclaim.

71. The Owners admit the EPC Agreement defines the terms "NRC," "Government Authority," and "Government Approval" and that the Contractor purports to quote incomplete portions of the latter two defined terms.  The Owners further state that the EPC Agreement speaks for itself and is the best evidence of its terms and content, and that any allegations

inconsistent therewith are denied.  The Owners deny the remaining allegations, if any, in Paragraph 71 of the Counterclaim.

72. The Owners deny that the quotations of certain phrases from Article 4.1 of the EPC Agreement are complete.  The Owners further state that the EPC Agreement speaks for itself and is the best evidence of its terms and content, and that any allegations inconsistent therewith are denied.  The Owners deny the remaining allegations, if any, in Paragraph 72 of the Counterclaim.

73. The Owners deny the allegations in Paragraph 73 of the Counterclaim.

74. The Owners deny the allegations in Paragraph 74 of the Counterclaim.

75. The Owners deny the allegations in Paragraph 75 of the Counterclaim.

## COUNT I

### (Breach of Contract – Shield Buildings)

76. The Owners incorporate by reference their responses to Paragraphs 1 through 75 of the Counterclaim as if fully set forth herein.

77. The Owners deny the allegations in Paragraph 77 of the Counterclaim.

78. The Owners deny the allegations in Paragraph 78 of the Counterclaim.

79. The Owners deny the allegations in Paragraph 79 of the Counterclaim.

80. The Owners deny the allegations in Paragraph 80 of the Counterclaim.

81. The Owners deny the allegations in Paragraph 81 of the Counterclaim.

82. The Owners deny the allegations in Paragraph 82 of the Counterclaim.

## COUNT II

### (Breach of Contract – Structural Modules)

83. The Owners incorporate by reference their responses to Paragraphs 1 through 82 of the Counterclaim as if fully set forth herein.

84. The Owners deny the allegations in Paragraph 84 of the Counterclaim.

85. The Owners deny the allegations in Paragraph 85 of the Counterclaim.

86. The Owners deny the allegations in Paragraph 86 of the Counterclaim.

87. The Owners deny the allegations in Paragraph 87 of the Counterclaim.

88. The Owners deny the allegations in Paragraph 88 of the Counterclaim.

89. The Owners deny the allegations in Paragraph 89 of the Counterclaim.

## COUNT III

### (Breach of Contract – LWA/COL Delays)

90. The Owners incorporate by reference their responses to Paragraphs 1 through 89 of the Counterclaim as if fully set forth herein.

91. The Owners deny the allegations in Paragraph 91 of the Counterclaim.

92. The Owners deny the allegations in Paragraph 92 of the Counterclaim.

93. The Owners deny the allegations in Paragraph 93 of the Counterclaim.

94. The Owners deny the allegations in Paragraph 94 of the Counterclaim.

95. The Owners deny the allegations in Paragraph 95 of the Counterclaim.

96. The Owners deny the allegations in Paragraph 96 of the Counterclaim.

## COUNT IV

### (Georgia Prompt Payment Act)
### (O.C.G.A. §§ 13-11-1 *et seq*)

97. The Owners incorporate by reference their responses to Paragraphs 1 through 96 of the Counterclaim as if fully set forth herein.

98. Paragraph 98 of the Contractor's Counterclaim constitutes a legal conclusion to which no response is required, but Owners deny that they have violated the Act. The Owners deny the remaining allegations, if any, in Paragraph 98 of the Counterclaim.

99. Paragraph 99 of the Contractor's Counterclaim constitutes a legal conclusion to which no response is required, but Owners deny that they have violated the Act. The Owners deny the remaining allegations, if any, in Paragraph 99 of the Counterclaim.

100. The Owners deny the allegations in Paragraph 100 of the Counterclaim.

101. The Owners deny the allegations in Paragraph 101 of the Counterclaim.

102. The Owners deny the allegations in Paragraph 102 of the Counterclaim.

103. The Owners deny the allegations in Paragraph 103 of the Counterclaim.

104. Any allegations of the Contractor's Counterclaim not expressly admitted herein are denied.

**Tenth Defense**

The Owners reserve the right to assert any additional defenses if discovery in this matter reveals that such defenses are applicable.

Wherefore, having fully answered, Plaintiffs demand judgment against Defendants on their Counterclaim.

This 24th day of October, 2013

Respectfully submitted,

        s/ Thomas W. Tucker
        Thomas W. Tucker
        Georgia Bar Number:  717975

        s/ Benjamin Brewton
        Benjamin Brewton
        Georgia Bar Number:  002530
        Lead Counsel for Plaintiffs Georgia Power
        Company; Oglethorpe Power Corporation;
        Municipal Electric Authority of Georgia; and The
        City of Dalton, Georgia
        **TUCKER, EVERITT, LONG**
        **BREWTON & LANIER**
        Post Office Box 2426
        Augusta, Georgia  30903-2426
        Telephone:  (706) 722-0771
        E-Mail:  ttucker@thefirm453.com
        E-Mail:  bbrewton@thefirm453.com

        s/ T. Joshua Archer
        T. Joshua Archer
        Georgia Bar Number:  021208
        Counsel for Plaintiffs Georgia Power Company;
        Oglethorpe Power Corporation; Municipal
        Electric Authority of Georgia; and The City of
        Dalton, Georgia
        **BALCH & BINGHAM LLP**
        30 Ivan Allen, Jr. Boulevard, N.W
        Suite 700
        Atlanta, GA  30308
        Telephone:  (404) 261-6020
        Facsimile:  (404) 261-3656
        E-Mail:  jarcher@balch.com

        s/ M. Stanford Blanton
M. Stanford Blanton
Georgia Bar No. 416899
Alabama Bar Number: 4913-75M
 (admitted *pro hac vice*)
Counsel for Plaintiffs Georgia Power Company; Oglethorpe Power Corporation; Municipal Electric Authority of Georgia; and The City of Dalton, Georgia
**BALCH & BINGHAM LLP**
1901 Sixth Avenue North
Suite 1500
Birmingham, AL 35203
Telephone: (205) 251-8100
Facsimile: (205) 226-8799
E-Mail: sblanton@balch.com


        s/ G. Lee Garrett, Jr.
G. Lee Garrett, Jr.
Georgia Bar Number: 286519
Joseph E. Finley
Georgia Bar Number: 261526
Counsel for Plaintiffs Georgia Power Company; Oglethorpe Power Corporation; Municipal Electric Authority of Georgia; and The City of Dalton, Georgia
**JONES DAY**
1420 Peachtree Street, N.E.
Suite 800
Atlanta, GA 30309-3053
Telephone: (404) 581-8013
E-Mail: ggarrett@jonesday.com
E-Mail: jfinley@jonesday.com

- and -

s/ Frank E. Riggs
Frank E. Riggs
Georgia Bar No. 605550
Counsel for Plaintiffs Georgia Power Company; Oglethorpe Power Corporation; Municipal Electric Authority of Georgia; and The City of Dalton, Georgia
**TROUTMAN SANDERS**
600 Peachtree Street, N.E.
Suite 5200
Atlanta, GA 30308-2216
Telephone:  (404) 885-3000
E-Mail: frank.riggs@troutmansanders.com

**ADDITIONAL COUNSEL:**

s/ Charles W. Whitney
Charles W. Whitney
Georgia Bar No. 756650
Counsel for Oglethorpe Power Corporation
2100 East Exchange Place
Tucker, GA  30084
Telephone:  (770) 270-7600
E-Mail:  chuck.whitney@opc.com


s/ Jeffrey Y. Lewis
Jeffrey Y. Lewis
Georgia Bar No. 450713
Scott A. Wandstrat
Georgia Bar No. 736514
C. Knox Withers
Georgia Bar No. 142842
Counsel for Oglethorpe Power Corporation
**ARNALL GOLDEN GREGORY LLP**
171 17th St., N.W. Suite 2100
Atlanta, GA 30363-1031
Telephone:  (404) 873-8500
E-Mail:  Jeffrey.lewis@agg.com
E-Mail:  scott.wandstrat@agg.com
E-Mail:  knox.withers@agg.com

        s/ Peter M. Degnan
Peter M. Degnan
Georgia Bar No. 216150
Counsel for Municipal Electric Authority of Georgia
**MUNICIPAL ELECTRIC AUTHORITY OF GEORGIA**
1470 Riveredge Parkway NW
Atlanta, GA 30328
Telephone: (770) 661-2806
E-Mail: pdegnan@meagpower.org


        s/ William H. Hughes, Jr.
William H. Hughes, Jr.
Georgia Bar No. 376450
Michael H. Shanlever
Georgia Bar No. 141292
Counsel for Municipal Electric Authority of Georgia
**ALSTON & BIRD**
One Atlantic Center
1201 West Peachtree Street
Suite 4200
Atlanta, GA  30309-3424
Telephone:  (404) 881-7000
E-Mail:  pete.degnan@alston.com
E-Mail:  bill.hughes@alston.com
E-Mail:  mike.shanlever@alston.com


        s/ William F. Jourdain
William F. Jourdain
Georgia Bar No. 405465
Counsel for the City of Dalton, Georgia
**MINOR BELL NEAL**
745 College Drive
Suite B
Dalton, GA 30720
Telephone: 706-712-5719
E-Mail:  wjourdain@mbnlaw.com

## CERTIFICATE OF SERVICE

In accordance with Fed. R. Civ. P. and S.D. Ga. LR 5.1, I hereby certify that I electronically filed the foregoing **ANSWER AND DEFENSES TO DEFENDANTS' COUNTERCLAIM** with the Clerk of Court using the CM/ECF system which will automatically send e-mail notifications of such filing to all attorneys of record.

This 24th day of October 2013

**JONES DAY**

By: /s/ G. Lee Garrett, Jr.
G. Lee Garrett, Jr.
Georgia Bar Number: 286519
Counsel for Plaintiffs Georgia Power Company; Oglethorpe Power Corporation; Municipal Electric Authority of Georgia; and The City of Dalton, Georgia
1420 Peachtree Street, N.E.
Suite 800
Atlanta, GA 30309-3053
Telephone: (404) 581-8013
E-Mail: ggarrett@jonesday.com